**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re:<br><br>TODD LEWIS CHEEK,<br><br>Debtor. | Case No. 19-12357 MER<br><br>Chapter 7 |
| KING OF FREIGHT, LLC,<br><br>Plaintiff.<br><br>v.<br><br>TODD LEWIS CHEEK,<br><br>Defendant. | Adv. Case No. 19-01196 MER |

**ORDER**

While the business relationship between the parties in this matter was brief, the subsequent litigation has spanned two states and over three years. The parties' dispute now comes before the Court on the Motion for Summary Judgment on Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) filed by the Plaintiff, King of Freight, LLC ("**KOF**").[1] The Court has reviewed the evidence and heard the parties' arguments,[2] and issues its ruling accordingly.[3]

**BACKGROUND**

Todd Lewis Cheek ("**Cheek**") was formerly employed by KOF as a Logistics Coordinator, and his girlfriend at the time, Charlotte Myrtle ("**Myrtle**"), was employed by KOF as Cheek's assistant.[4] Cheek entered into a Non-Competition and Confidentiality Agreement ("**NCCA**") as part of his employment with KOF, in which he agreed not to disclose certain information, including customer lists, with anyone without KOF's

---

[1] ECF No. 24 ("**Motion**"). *See also* ECF Nos. 27 (Response) and 28 (Reply).

[2] ECF No. 31.

[3] This memorandum opinion shall constitute the Court's findings of facts and conclusions of law for purposes of Fed. R. Civ. P. 52(a), made applicable by Fed. R. Bankr. P. 7052.

[4] *See* Motion at Exh. 1 ("**Kansas Complaint**"), ¶¶ 6-10. The Court notes Cheek disputed this fact, as well as several others. As discussed further herein, Cheek did not provide evidence supporting his disputes in his Response. Accoridngly, the Court will treat all of KOF's factual assertions, such as they are supported by evidence, as undisputed for the purposes of the Motion and this Order.

consent during and after their employment.[5] Under the NCCA, Cheek also agreed to refrain from soliciting KOF's customers and competing with KOF for a period of two years after his employment ended.[6]

Cheek's employment was terminated on November 17, 2017, after Cheek sent "rude and harassing" text messages to KOF's owner, and Myrtle resigned almost immediately thereafter.[7] The same day, Cheek and Myrtle sent a number of emails to KOF's customers, soliciting their business and saying KOF had engaged in "unlawful business practices[.]"[8] On November 17, 2017, Cheek also registered a limited liability company called "Freight King LLC" with the Kansas Secretary of State.[9]

On November 21, 2017, KOF initiated an action against Cheek and Myrtle in the District Court for Sedgwick County, Kansas ("**Kansas Court**"), Case No. 2017-CV-002688-CE ("**Kansas Case**"), asserting claims for breach of contract, tortious interference with business relations, defamation, and civil conspiracy, as well as a request for a temporary restraining order.[10] Although an attorney entered an appearance for Cheek, and stipulated to a temporary restraining order on Cheek's behalf prior to the deadline for a responsive pleading,[11] Cheek failed to timely file any substantive response to the Kansas Complaint. As a result, on February 9, 2018, the Kansas Court entered a Journal Entry of Default against Cheek and scheduled a bench trial on damages (the "**Damages Trial**").[12]

The Damages Trial was held on April 23, 2018.[13] The Kansas Court heard testimony from KOF's general manager, Brandon Howarah ("**Howarah**"), and admitted forty exhibits.[14] The Kansas Court noted it sent out notice of the bench trial and also left a voicemail to notify Cheek of the Damages Trial, but nonetheless Cheek failed to appear.[15]

At the Damages Trial, Howarah testified the day Myrtle and Cheek were terminated from KOF, he discovered an email from Myrtle to Cheek containing a list of

---

[5] See Motion at Exh. 5 (NCCA).

[6] Id.

[7] Kansas Complaint at ¶ 18.

[8] Id. at ¶ 24.

[9] Id. at ¶ 33.

[10] Kansas Complaint.

[11] See Motion at Exh. 4 ("**Reconsideration Order**"), p. 2. The Kansas Court subsequently allowed such counsel to withdraw from representation on February 9, 2018.

[12] Motion at Exh. 2 ("**Default Judgment**").

[13] See Motion at Exh. 3 ("**Damages Order**"); Exh. 6 (transcript of Damages Trial).

[14] Motion at Exh. 6.

[15] Id. at pp. 3-4.

KOF customers.[16] Howarah further testified Cheek communicated with KOF clients, telling the clients KOF employed unlawful business practices, in an attempt to solicit KOF's customers for his new company Frieght King, LLC.[17] Cheek also solicited KOF employees to provide accounting records for KOF clients in exchange for payment.[18] From these efforts, KOF concluded Cheek successfully obtained the business of two of its clients and as a result of Cheek's actions, KOF lost profits with a number of accounts Cheek had been servicing.[19] Howarah testified prior to Cheek's involvement, KOF had not had any issues with the affected clients.[20]

The Kansas Court entered a judgment for damages against Cheek and Myrtle, jointly and severally, for the principal balance of $255,747.00 with interest thereon ("**Initial Damages Award**"), plus $10,500 for attorneys' fees and costs ("**Initial Fee Award**").[21] The Damages Order contains seven pages of the Kansas Court's findings based on Howarah's testimony and the other evidence presented. Specifically, the Kansas Court found prior to their departure, Cheek and Myrtle solicited KOF's clients and falsely claimed KOF was engaged in unlawful business practices, and did so "intentionally, willfully and maliciously."[22] The Kansas Court found Cheek and Myrtle "intentionally, willfully and maliciously interfered with [KOF's] business relationships by: soliciting [KOF's] customers in violation of their Agreements; by making false statements to [KOF's] customers that [KOF] is engaged in unlawful activity; and by conspiring together to breach their Confidentiality and Non-Competition Agreements and to use confidential customer information for the purpose of soliciting [KOF's] customers for their own financial gain and to damage [KOF]."[23]

Accordingly, the Kansas Court found KOF demonstrated its claims against Cheek and Myrtle for intentional tortious interference with its business, as well as breach of contract and defamation.[24] KOF was also granted a permanent injunction commencing April 24, 2018, and continued until April 24, 2020, enjoing and prohibiting Cheek and Myrtle from soliciting KOF's customers, competing with KOF within a defined location, and from soliciting employees of KOF.[25]

---

[16] *Id.* at p. 13.

[17] *Id.* at pp. 15-18.

[18] *Id.* at p. 19.

[19] *Id.* at pp. 21-32.

[20] *Id.* at 39

[21] Damages Order at p. 10.

[22] *Id.* at ¶¶ 23-24, 27.

[23] *Id.* at ¶ 36.

[24] Motion at Exh. 6 at pp. 48-50.

[25] *Id.* (the "**Enjoined Activities**").

On November 16, 2018, Cheek filed a Motion to Set Aside Default Judgment, and a hearing was held on December 7, 2018 ("**Reconsideration Hearing**").[26] On that date, Cheek appeared with counsel and testified on his own behalf. Howarah again testified for KOF. At the Reconsideration Hearing, Cheek testified he was aware of Myrtle coming to the various court proceedings throughout the Kansas Case, even though he did not personally attend them.[27] Cheek further testified following the entry of the temporary injunction, he continued to do business with at least one of KOF's customers.[28]

The Kansas Court entered its order denying Cheek's Motion to Set Aside on January 4, 2019.[29] In the Reconsideration Order, the Kansas Court emphasized Cheek's conscious decision not to participate in the Kansas Case proceedings until the Motion Set Aside was filed.[30] The Kansas Court also made particular note of the prejudice suffered by KOF.[31] Cheek's bankruptcy filing followed on March 28, 2019 ("**Petition Date**"),[32] with the instant proceeding filed by KOF shortly thereafter.[33]

On November 27, 2019, after obtaining relief from the automatic stay from this Court,[34] KOF filed a citation in contempt with the Kansas Court, seeking to have Cheek held in contempt for violating the permanent injunction. On September 15, 2020, the Kansas Court held a hearing on the same ("**Contempt Hearing**").[35]

At the Contempt Hearing, Howarah testified as to Cheek's ongoing violations of the permanent injunction, and ultimately the Kansas Court found Cheek to be in contempt.[36] The Kansas Court found Cheek violated the injunction from April 24, 2018, to March 28, 2019, by conducting business with a number of KOF's customers, damaging KOF in the amount of $40,890.95 in lost net profits ("**Pre-Petition Contempt Damages**"), and from March 28, 2019, to July 23, 2019, damaging KOF in the amount of $3,994.09 in lost net profits ("**Post-Petition Contempt Damages**"). The Kansas

---

[26] See Motion at Exh. 7.

[27] Id. at pp. 83-85.

[28] Id. at pp. 91-92.

[29] Reconsideration Order at p. 4.

[30] Id. at p. 5.

[31] Id. at p. 9.

[32] Case No. 19-12357 MER ("**Administrative Case**"). The Court notes Cheek filed a petition prior to filing the Administrative Case, Case No. 19-10412 EEB, on January 21, 2019. This case was dismissed on March 13, 2019.

[33] ECF No. 1.

[34] ECF No. 25 in Case No. 19-12357 ("**Stay Order**").

[35] Motion at Exh. 9.

[36] Motion at Exh. 8 ("**Contempt Order**").

Court further awarded KOF $15,581.13 in attorney fees ("**Contempt Fee Award**"),[37] and ordered the injunction extended to September 15, 2021.

Having already established the damages and attorney fees incurred in the Kansas Case prior to the Petition Date, KOF now moves for summary judgment on its claims asserted against Cheek in the instant proceeding, namely for a determination of nondischargebaility of the Intial Damages Award, Initial Fee Award, Pre-Petition Contempt Damages, and the portion of the Contempt Fee Award attributable to pre-petition attorney fees, pursuant to 11 U.S.C. § 523(a)(4) and/or (a)(6).[38] KOF argues claim and/or issue preclusion bars the relitigation of the merits of the damage awards in the instant proceeding and judgment should be entered in its favor. KOF likewise requests an order from this Court confirming the Post-Petition Contempt Damages and the portion of the Contempt Fee Award attributable to post-petition attorney fees are not subject to Cheek's discharge, which entered on September 18, 2019.[39]

## ANALYSIS

**A.    Summary Judgment Standards.**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] The burden for establishing entitlement to summary judgment rests on the movant,[41] and the Court must view the record in the light most favorable to the non-moving party.[42] Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[43] A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[44]

Importantly, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[45] Although Cheek disputed

---

[37] The Court notes the Kansas Court did not specify which part of the Contempt Fee Award constituted pre-petition fees.

[38] Unless otherwise specified, all references herein to "Section," "§," and "Code" refer to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

[39] Administrative Case at ECF No. 53.

[40] Fed. R. Civ. P. 56(a) (as incorporated by Fed. R. Bankr. P. 7056).

[41] Fed. R. Civ. P. 56; *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[42] *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir. 1988).

[43] *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

[44] *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

[45] *Id.* at 257.

a number of KOF's factual assertions, the only evidence included with his Response was KOF's responses to Myrtle's discovery requests and a spreadsheet of damages. After review the Court finds these documents insufficient to rebut the properly supported factual assertions of KOF, and the same are deemed admitted.

### B. Claim and Issue Preclusion

In addressing preclusion doctrines, a federal court must look to the law of the state in which the previous judgment entered, pursuant to the full faith and credit statute, 28 U.S.C. § 1738.[46] Because the judgment at issue here was entered in Kansas, Kansas state law on claim and issue preclusion applies.

The Kansas Supreme Court describes both preclusion doctrines as follows:

> Claim preclusion is a common-law doctrine, designed to prevent relitigation of a final judgment. In Kansas, four elements must be met to invoke the doctrine. Most plainly stated, claim preclusion requires: (1) the same claim; (2) the same parties; (3) claims that were or could have been raised; and (4) a final judgment on the merits. *Winston v. State Dept. of SRS,* 274 Kan. 396, 413, 49 P.3d 1274 (2002).
>
> . . .
>
> Issue preclusion prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action. Three elements are required for issue preclusion: (1) a prior judgment on the merits that determined the parties' rights and liabilities on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the same parties or parties in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *Venters v. Sellers,* 293 Kan. 87, 98, 261 P.3d 538 (2011).[47]

KOF pursued multiple state law claims against Cheek. Because those claims arose purely of state law, none of those claims exactly match the purely federal claims asserted in this matter, nor could they. As stated by the Supreme Court in *Brown v. Felsen*, since 1970, dischargeability claims have been determined exclusively pursuant to the Code and not the state court in which the creditor originally sued.[48] Because the Kansas Court did not determine whether KOF's claim was nondischargeable, claim preclusion cannot as a matter of law extend to this adversary proceeding.

Whether the orders from the Kansas Court are entitled to issue preclusion is a separate matter, however, and bankruptcy courts routinely apply the doctrine in

---

[46] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). *See also Nichols v. Board of County Commissioners*, 506 F. 3d 962, 967 (10th Cir. 2007) (citing *Marrese*).

[47] *In re Application of Fleet for Relief from a Tax Grievance in Shawnee County*, 272 P.3d 583, 589-90 (Kan. 2012).

[48] *Brown v. Felsen*, 442 U.S. 127, 129-30 (1979).

6

dischargeability actions.[49] Because the parties are clearly the same in both lawsuits, the Court need only consider the first and third elements of issue preclusion.

As stated above, the first element for issue preclusion is "a prior judgment on the merits that determined the parties' rights and liabilities on the issue based upon ultimate facts as disclosed by the pleadings and judgment."[50] Cheek disputes this element is met insofar as a default judgment was issued against him. While it is true "[e]xcept in limited circumstances . . . default judgments are not given preclusion effect,"[51] such limited circumstances include where the defaulting party actually participated in the proceedings where the default judgment was entered.[52] Here, the undisputed facts clearly demonstrate Cheek participated in the Kansas Case proceedings insofar as he moved for reconsideration of the default judgment, participated extensively in the related hearings[53] and, according to the Kansas Court, chose not to attend the intial Damages Hearing despite having knowledge of it.[54] In considering Cheek's motion for reconsideration, the Kansas Court found "Cheek knew of the answer date, knew of the liability default hearings, and knew of the bench trial on damages, either through service of motions or through Myrtle reporting the results to him almost immediately after hearings she attended."[55] As such, the Court finds the first element for issue preclusion is satisfied.

The most disputed element of issue preclusion in this case is the third, specifically, whether the issue litigated was determined and necessary to support the judgment. According to Cheek, the issue of his intent was not necessary to support the judgment insofar as "fraudulent intent" is not a required element of any of the state law claims brought against him by KOF. The Court disagrees with Cheek's conclusion, because KOF's tortious interference with business relations claim required showing "intentional misconduct by defendant" and "damages suffered by plaintiff as a direct of proximate cause of defendant's misconduct[.]"[56] In contrast, KOF's claim under § 523(a)(6) in the instant matter requires proof of "1) an intentional action by the defendant; 2) done with the intent to harm; 3) which causes damage (economic or

---

[49] *See, e.g., In re Hauck*, 466 B.R. 151 (Bankr. D. Colo. 2012) (applying Colorado issue preclusion law).

[50] *Application of Fleet*, 272 P.3d at 589.

[51] *In re McArthur*, 391 B.R. 453, 458 (Bankr. D. Kan. 2008).

[52] *See id.* at n. 22 (citing *In re Corey*, 2007 WL 4563432 (Bankr. D. Kan. 2007)).

[53] *See* Motion at Exh. 7.

[54] Reconsideration Order at p. 3.

[55] *Id.*

[56] *Meyer Land & Cattle Co. v. Lincoln Cty. Conservation Dist.*, 31 P.3d 970, 972 (Kan. App. 2001).

physical) to the plaintiff; and 4) the injury is the proximate result of the action by the defendant."[57]

The Kansas Court specifically found Cheek committed intentional misconduct, stating he "intentionally, willfully and maliciously interfered with [KOF]'s business relationships by: soliciting [KOF]'s customers in violation of their Agreements; by making false statements to [KOF]'s customers that [KOF] is engaged in unlawful activity; and by conspiring together to breach their Confidentiality and Non-Competition Agreements and to use confidential customer information for the purpose of soliciting [KOF]'s customers for their own financial gain and to damage [KOF]."[58] The Kansas Court then found KOF's damages were caused by such misconduct. Accordingly, it is clear the Kansas Court's findings regarding Cheek's intent in committing such misconduct and the causation of KOF's damages were necessary for the Damages Order, and this Court is precluded from revisiting these issues.

### C. KOF's Claims Under § 523

Having found issue preclusion applies to the Kansas Court's findings regarding Cheek's intent and the causation of KOF's damages, the Court begins its analysis of the specific claims asserted by KOF with KOF's claim under § 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[59]

Section 523(a)(6) refers only to acts taken with an actual intent to cause injury.[60] As the Supreme Court instructed in *Geiger*,

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally

---

[57] *In re Tilley*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002); *see also In re Smith*, 249 B.R. 748, 750 (Bankr. S.D. Ohio 2000) ("The debtor's actions must be determined to be the cause of the creditor's injury."); *see also In re Charron*, 541 B.R. 656, 665 (Bankr. W.D. Mich. 2015) ("To except a debt from discharge under this subsection, the Plaintiff must show that he suffered a loss or injury as a result of willful and malicious conduct of the debtor.").

[58] Damages Order at ¶ 36.

[59] 11 U.S.C. § 523(a)(6).

[60] *In re Vickery*, 526 B.R. 872, 879 (Bankr. D. Colo. 2015) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998)).

8

require that the actor intend "the *consequences* of an act," not simply "the act itself."[61]

Thus, nondischargeability under § 523(a)(6) requires proof of both a willful act and a malicious injury.[62] "A 'willful act' is one in which the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it."[63] "A 'malicious injury' occurs when there is proof that the debtor either intended the resulting injury or intentionally took action that was substantially certain to cause the injury."[64] The requirement of maliciousness "is satisfied upon a showing the injury was inflicted without just cause or excuse."[65]

As explained above, this Court is precluded from revisiting the issue of Cheek's intent. The Kansas Court found Cheek acted willfully and intentionally, and intended to injure KOF insofar as he sought to damage its reputation and take business away from it.[66] Accordingly, KOF has met its burden of establishing the Damages Award is nondischargeable under § 523(a)(6).

With respect to the Pre-Petition Contempt Damages, the Kansas Court made no findings as to Cheek's intent in its Contempt Order, but the evidence presented demonstrates Cheek was aware of the injunction put in place and his obligations to refrain from the Enjoined Activities from the entry of the intial preliminary injunction, because the Kansas Court entered the injunction pursuant to a stipulation by Cheek's own counsel of record.[67] Additionally, the evidence makes it clear Cheek intended to cause harm to KOF by engaging in the Enjoined Activities.[68] Cheek's own words show his intent to cause harm to KOF by engaging in the Enjoined Activities, for example by writing "Hahahaha did this do anything? The real Freight King is too many steps ahead to try and catch up now. I've [expletive] on what took you clowns years in a matter of months."[69] As such, the Court finds the Pre-Petition Contempt Damages are likewise nondischargeable under § 523(a)(6).

---

[61] *Geiger,* 523 U.S. at 61–62 (emphasis original) (quoting Restatement (Second) of Torts § 8A, Comment *a,* p. 15 (1964) (emphasis added)).

[62] *Panalis v. Moore (In re Moore),* 357 B.R. 1125, 1129 (10th Cir. 2004); *In re Tinkler*, 311 B.R. 869, 878 (Bankr. D. Colo. 2004).

[63] *Vickery*, 526 B.R. at 879-80 (citing *Moore*, 357 B.R. at 1129).

[64] *Id.*

[65] *Wagner v. Wagner (In re Wagner)*, 492 B.R. 43, 55 (Bankr. D. Colo. 2013) (citations omitted); *In re Parra*, 483 B.R. 752, 773 (Bankr. D.N.M. 2012) ("the 'malicious' component of 11 U.S.C. § 523(a)(6) requires an intentional, wrongful act, done without justification or excuse.").

[66] Damages Order at ¶ 36.

[67] Motion at Exh. 2.

[68] *See* Motion at Exhs. 2 and Exh. Labeled "Kansas Trial Exh. 20."

[69] Motion at Kansas Trial Exh. 20.

In light of the nondischargeability of damage awards, the Court must consider whether the Initial Fee Award and Pre-Petition Contempt Fee Award are likewise nondischargeable. This Court has previously explained when attorney fees and costs are awarded "'with respect to' or 'by reason of' the . . . underlying conduct giving rise to the litigation," and such conduct leads to a debt excepted from discharge pursuant to § 523(a)(6), the resultant attorney fees are also nondischargeable.[70]

Here, Section 12 of the NCCA provides as follows:

f. Employee specifically agrees that he/she will pay the Company any costs, including, but not limited to, reasonable attorneys' fees incurred by the Company in the enforcement of this Agreement against the Employee, whether by way of seeking equitable relief and/or an action for damages.[71]

It is clear the Initial Fee Award and Contempt Fee Award, at least the portion of such fees incurred prior to the Petition Date, are resultant damages, flowing from Cheek's misconduct which gave rise to the Initial Damages Award and the Pre-Petition Contempt Damages. As such, the Initial Fee Award and the portion of the Contempt Fee Award incurred prior to the Petition Date are likewise nondischargeable pursuant to § 523(a)(6).

Having found the entirety of KOF's pre-petition claim to be nondischargeable under § 523(a)(6), the Court need not consider whether such amounts are also nondischargeable under § 523(a)(4). The Court notes, however, Cheek's misuse of KOF's confidential information may constitute "embezzlement" as described in § 523(a)(4),[72] which would likewise except KOF's claim from Cheek's discharge.

### D.  The *Rooker-Feldman Doctrine*

Next, the Court must also address Cheek's arguments as to the amounts of the damages awarded to KOF. Cheek requests the Court consider the large discrepancy in the amounts of the Initial Damages Award of $255,757 and the Pre-Petition Contempt Damages Award of $40,890.95 and consider whether KOF "seeks to both enforce an inflated judgment and seeks to duplicate damages."[73] The Court is barred from revisting these figures, however, in light of the *Rooker-Feldman* doctrine.

---

[70] *Nolan v. Smith*, 321 B.R. 542, 548 (Bankr. D. Colo. 2005) (quoting *Cohen v. de la Cruz*, 523 U.S. 213 (1998)).

[71] Motion at Exh. 5 at p. 4.

[72] Section 523(a)(4) precludes discharge of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Specifically, "[a]n embezzlement claim has five elements: '1. Entrustment (property lawfully obtained originally); 2. Of property; 3. Of another; 4. That is misappropriated (used or consumed for a purpose other than that for which it was entrusted); 5. With fraudulent intent.'" *In re Palilla*, 493 B.R. 248, 252 (Bankr. D. Colo. 2013) (quoting *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 789 (Bankr. D. Colo. 2002)).

[73] Response at p. 11.

"Under the *Rooker-Feldman* doctrine, the federal courts lack subject matter jurisdiction to hear appeals from final judgments of state courts or to adjudicate claims that are inextricably intertwined with those judgments."[74] The Supreme Court has stated the *Rooker-Feldman* doctrine bars lower federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[75]

There is no dispute the damage amounts awarded by the Kansas Court constitute final orders of that court. As such, this Court lacks jurisdiction to alter those figures in any way. Moreover, the Court declines to examine those figures any further in its determination of the dischargeability of those debts insofar as the Kansas Court clearly explained how the damage figures were calculated. To the extent Cheek challenges those figures, the place to do so is with the Kansas Court.

### E.    KOF's Post-Petition Damages

Finally, KOF asserts the Post-Petition Contempt Damages and any portion of the Contempt Fee Award incurred after the Petition Date were not included in Cheek's discharge. This Court agrees. Under § 727(b), subject to exceptions, a discharge "discharges the debtor from all debts that arose before the date of the order for relief under this chapter." Because the Post-Petition Contempt Damages and the Contempt Fee Award incurred after the Petition Date clearly did not "arise before the date of the order for relief" in Cheek's Administrative Case, such debts were not included in Cheek's discharge.[76]

## CONCLUSION

Cheek purposefully chose not to participate in the Kansas Case proceedings in an attempt to avoid the consequences of his actions, while continuing to engage in the same types of activity that landed him in the Kansas Court in the first place. The final orders and findings of the Kansas Court cannot be changed by this Court. Those findings establish as a matter of law Cheek is not an honest but unfortunate debtor but rather the debts owed to KOF are nondischargeable due to Cheek's willful and malicious conduct. Accordingly, for the foregoing reasons,

---

[74] *In re Ebel*, 139 F. App'x 26, 28 (10th Cir. 2005); *In re Smith*, 321 B.R. 542, 550 (Bankr. D. Colo. 2005) ("Under the *Rooker–Feldman* doctrine, this Court cannot act as an appellate court to the state court or otherwise collaterally attack the state court judgment.") (both citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

[75] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[76] The Court declines to consider whether the post-petition attorney fees incurred as part of this proceeding are enforceable against Cheek. The Kansas Court awarded such fees in its Contempt Order, and if Cheek disputes he is liable for such amounts under the NCCA, he should have made such argument to the Kansas Court.

      IT IS HEREBY ORDERED judgment shall enter in favor of KOF on its second claim for a determination of nondischargeability of debt under § 523(a)(6), rendering its first claim under § 523(a)(4) moot.

      IT IS FURTHER ORDERED the Post-Petition Contempt Damages and portion of the Contempt Fee Award incurred post-petition were not included in Cheek's discharge pursuant to § 727(b).

Dated January 15, 2021        BY THE COURT:

_____
Michael E. Romero, Chief Judge
United States Bankruptcy Court